UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIO TOLEDO and DENISE TOLEDO,<br><br>               Plaintiffs<br><br>v.<br><br>CITY OF SPRINGFIELD, POLICE DEPARTMENT,<br><br>               Defendant | CIVIL ACTION NO. |

## COMPLAINT AND JURY DEMAND

### Parties

1.    The Plaintiff, Julio Toledo (hereinafter referred to as "Julio Toledo" or collectively as "Plaintiffs"), is a natural person with a residential address of 67 Weaver Road, Springfield, Hampden County, Massachusetts.

2.    The Plaintiff, Denise Toledo (hereinafter referred to as "Denise Toledo" or collectively as "Plaintiffs"), is a natural person with a residential address of 67 Weaver Road, Springfield, Hampden County, Massachusetts.

3.    The Defendant, City of Springfield, Police Department, is a municipal entity located at 130 Pearl Street, Springfield, Hampden County, Massachusetts.

### Jurisdiction

4.    This Court has jurisdiction over the federal claims set forth herein, pursuant to 28 U.S.C. §§ 1331, 1332 and otherwise. There are federal questions of law and the amount in controversy is in excess of $75,000.00. The Plaintiffs' federal claims are brought under

Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Family Medical Leave Act ("FMLA").

5. This Court has supplemental jurisdiction over the state claims set forth herein, pursuant to 28 U.S.C. § 1367 and otherwise. The Plaintiffs' state claims are brought under Massachusetts General Laws, chapter 151B.

**Venue**

6. This Court serves as the proper venue where the facts giving rise to the Plaintiffs' claims set forth herein occurred in Hampden County, Massachusetts.

**Facts**

7. Julio Toledo was hired by the Defendant as a police officer in or about 1996.

8. Julio Toledo has performed his job duties and responsibilities well throughout the course of his employment with the Defendant, and has been promoted through the ranks.

9. Denise Toledo began working for the Defendant in or about December of 2010.

10. Denise Toledo has performed her job duties and responsibilities well throughout the course of her employment with the Defendant.

11. Throughout the course of Denise Toledo's employment with the Defendant, her supervisor, Sergeant Charles Howard, sexually harassed her, created a hostile work environment and retaliated against her.

12. Sgt. Howard regularly stared at Denise Toledo in a sexual manner, looking her up and down and/or staring at her breasts or buttocks. Sgt. Howard also made numerous inappropriate sexual comments to Denise Toledo suggesting that he was interested in her romantically and sexually. Denise Toledo resisted these overtures and was intimidated and

extremely uncomfortable in Sgt. Howard's presence because of his inappropriate conduct and behavior.

13.    Further, beginning in or about 2011, Sgt. Howard started to frequently show up at Denise Toledo's calls for service regardless of what sector of the City she was assigned to and regardless of whether or not a supervisor's attendance was required. As a supervisor, Sgt. Howard was assigned to certain specific parts of the City which were different than those assigned to Denise Toledo. Based upon information and belief, Sgt. Howard had no reason to show up to Denise Toledo's calls for service and some of Denise Toledo's coworkers also began to take notice and to comment about this conduct.

14.    On some occasions, Sgt. Howard would not say anything to anyone when he showed up to Denise Toledo's calls for service, sometimes he would just sit in his cruiser and stare and on other occasions, he would talk to everyone there but Denise Toledo.

15.    Beginning in or about 2011, Sgt. Howard began visiting the matron's office frequently throughout the course of his shift when Denise Toledo was assigned matron duties.[1] The matron's office is located in the female cellblock and the practice was that the supervisors would be there at the beginning of the shift only. Sgt. Howard continually attempted to engage Denise Toledo in conversation that was entirely unrelated to their work and on many occasions asking about her personal and private business. Denise Toledo did not entertain Sgt. Howard's attempts to converse about these matters and made her disinterest obvious. Sgt. Howard would gaze at Denise Toledo and make her feel extremely uncomfortable.

16.    In or about October of 2011, the conduct escalated to nonconsensual touching. On one

---

[1]    The matron's office is charged with the duties of managing women held in Department cellblocks.

occasion, Sgt. Howard approached Denise Toledo from behind, placed his hand on her back and told her that he really liked and cared about her. Denise Toledo again resisted his advances and felt intimidated and extremely uncomfortable and immediately walked away from Sgt. Howard.

17. Denise Toledo reported Sgt. Howard's behavior to the Union President, Officer J. Gentile, on numerous occasions. Officer Gentile agreed with Denise Toledo that she should not have to tolerate Sgt. Howard's behavior and instructed Denise Toledo to document everything. Officer Gentile further informed Denise Toledo that she was not the first police officer to make complaints about Sgt. Howard's inappropriate conduct and that he had been spoken to in the past regarding this behavior.

18. Officer Gentile further instructed Denise Toledo, in reference to her complaints about Sgt. Howard, to not "make waves" because it would be a "hard battle to face." Denise Toledo feared that if she continued to complain about Sgt. Howard that she would lose her job since she was still in her probationary period.

19. At the end of her initial probationary period, Denise Toledo was given a bogus poor performance evaluation and was required to attend retraining. The alleged reason for the poor evaluation was a "lack of computer skills." At retraining, Deputy McFarlin told Denise Toledo that he had no idea why she had been sent to retraining. Denise Toledo was asked to turn on a computer, log in to a computer program and demonstrate her ability to navigate it. Denise Toledo complied and was quickly dismissed from retraining, as she was clearly competent. Denise Toledo inquired as to who had written the poor performance evaluation but was

denied the requested information. Denise Toledo requested to look at her personnel file and discovered that it was empty. Based upon information and belief, Sgt. Howard wrote the poor performance evaluation, after Denise Toledo resisted his inappropriate overtures and advances and complained of same.

20.    In or about July of 2012, Denise Toledo was scheduled to work a detail with Sgt. Howard. Although there were two (2) other police officers assigned to the detail, Sgt. Howard announced that Denise Toledo would be riding only with him in his cruiser. During the detail, Sgt. Howard (without explanation) drove out of Springfield and into East Longmeadow, Massachusetts. Denise Toledo, alarmed, asked Sgt. Howard where they were going and he replied "don't worry about it." After arriving at an unidentified house, Sgt. Howard told Denise Toledo that he was going to check on his bike and then asked her if she wanted to go inside, grab a drink and get "comfortable." Denise Toledo immediately declined and told Sgt. Howard she would wait in the cruiser.

21.    When Sgt. Howard returned to the cruiser, he suggested that he was hungry and asked Denise Toledo if she was hungry too because he could "hook [her] up." Sgt. Howard proceeded to drive to the Basketball Hall of Fame and to get lunch for him and Denise Toledo at Sam's Sports Bar. When Sgt. Howard got back into the cruiser, he said, "See? I am a nice guy. I'll bring you nothing but the best." Denise Toledo ignored Sgt. Howard's comment and continued to resist his romantic overtures and pleaded with him to leave her alone.

22.    Shortly thereafter, Sgt. Howard's attitude and demeanor toward Denise Toledo changed. Sgt. Howard retaliated against Denise Toledo and, on numerous occasions

thereafter, sought to antagonize and belittle her in front of other officers and supervisors. Sgt. Howard also began spreading rumors about Denise Toledo. For example, Sgt. Howard spread rumors that Denise Toledo was sleeping with numerous male officers.

23. Graffiti appeared on the men's bathroom wall that read, "Julio, your girl is fucking her partner. Sorry." The Plaintiffs immediately complained about the graffiti but to no avail. The graffiti remained on the bathroom wall for years and was not removed until approximately December of 2017.

24. On or about October 28, 2012, Denise Toledo confronted Sgt. Howard and demanded that he leave her alone and stop trying to flirt with her. Denise Toledo told Sgt. Howard that she did not have feelings for him and did not want to sleep with him. Sgt. Howard did not say anything in response to Denise Toledo. Lt. D. Martin, who had witnessed the confrontation, instructed Sgt. Howard to leave Denise Toledo alone.

25. Shortly thereafter, Lt. Martin approached Denise Toledo and informed her that his girlfriend (another officer) had had a similar problem with Sgt. Howard. Lt. Martin instructed Denise Toledo to talk to the Union President.

26. Denise Toledo, at this time, was under tremendous stress from Sgt. Howard's inappropriate conduct and behavior toward her.

27. In or about February of 2013, Sgt. Jessica Henderson, who is known amongst employees of the Defendant to be very close to Sgt. Howard, began to harass, belittle and micromanage the Plaintiffs.

28. On or about February 22, 2013, Sgt. Henderson took Denise Toledo's textbook and proceeded to deface it. That same day, Sgt. Henderson berated

Denise Toledo for a police report she and her partner had authored following a robbery case. Specifically, Sgt. Henderson chastised Denise Toledo for using the word "strangled" instead of "choked" in the police report and for charging the offenders with armed robbery as opposed to unarmed robbery. Sgt. Henderson directed her criticism only at Denise Toledo and did not criticize her partner who co-authored the police report.

29. After the incident on or about February 22, 2013, Julio Toledo confronted Sgt. Henderson regarding it. Julio Toledo filed a formal complaint against Sgt. Henderson for workplace harassment.

30. On or about May 25, 2013, Denise Toledo suffered a miscarriage.

31. Denise Toledo returned to work on or about May 30, 2013 and asked Captain Brown if she could have an inside post for the next couple of days as an accommodation for the miscarriage. Denise Toledo asked Capt. Brown if he could keep the information confidential to which Capt. Brown responded that she had no privacy because she was not covered by "HIPPA laws."

32. Denise Toledo walked in on Capt. Brown discussing the fact that she had had a miscarriage with Sgt. Howard. Shortly thereafter, numerous coworkers had approached Denise Toledo to offer their condolences for the miscarriage.

33. Capt. Brown accused Denise Toledo of having planned the miscarriage in order to spend more time with Julio Toledo.

34. Denise Toledo reported the incidents surrounding Capt. Brown to the Union President on or about June 3, 2013.

35. On or about July 11, 2013, the Plaintiffs met with Officer Gentile and Union

7

Attorney Kevin Coyle regarding Sgt. Howard. The Plaintiffs were informed that if Denise Toledo proceeded with her complaints against Sgt. Howard that she would become a target and that the Defendant had a poor history of supporting officers in disputes against supervisors.

36.     In an effort to get away from Sgt. Howard, Denise Toledo switched to a different work shift. The work shift change was an extreme hardship on the Plaintiffs and their family but Denise Toledo was desperate to get away from Sgt. Howard and out from under his direct supervision and constant sexual harassment and retaliation.

37.     In or about February of 2014, Denise Toledo was transferred to Squad C, second shift. Sgt. Howard remained on his regular shift.

38.     In or about May/June of 2014, while working on a job outside on Boston Road, Denise Toledo noticed Sgt. Howard drive slowly past her multiple times. Sgt. Howard was assigned as a CAD supervisor and had no reason to be at Denise Toledo's location. Based upon information and belief, Sgt. Howard was assigned to an inside post at the Police Department, on the other side of the City.

39.     That same day, another police sergeant from the Defendant approached Denise Toledo and informed her that Sgt. Howard had asked him to approach her and question her as to how she was standing in the road.

40.     In or about June of 2014, Denise Toledo was working a detail when Sgt. Howard walked past her and called her a "bitch."

41.     On numerous occasions throughout 2014 and 2015, Sgt. Howard would show up to Denise Toledo's assigned work locations and stare her down in an intimidating

8

manner. Denise Toledo was very scared for her and her family's safety.

42. In or about April of 2015, Denise Toledo was transferred to the Major Crimes Unit, Squad B. Denise Toledo was assigned to first shift. Around that same time, Sgt. Howard was transferred to the Student Support Unit, located in a different building than Denise Toledo.

43. Notwithstanding the fact that Sgt. Howard was assigned to work in a different building than Denise Toledo, the sexual harassment and retaliation continued.

44. Denise Toledo began to hear stories from various female co-workers about Sgt. Howard harassing and stalking them at the Defendant and women at the schools where Sgt. Howard was assigned to work.

45. In or about August of 2017, Sgt. Howard was promoted to Lieutenant.

46. In or about November of 2017, the Plaintiffs began noticing that a supervisor's cruiser had been frequently appearing in their neighborhood.

47. On one night in particular, at approximately midnight, Julio Toledo noticed a cruiser parked in front of a neighboring house that had been vacant for approximately four (4) years. There had been no calls for service in the Plaintiffs' neighborhood at that time.

48. Julio Toledo called the Defendant to find out who was assigned to the particular supervisor cruiser, parked in front of a neighboring driveway, and was shocked to learn that it was Lt. Howard.

49. On or about November 28, 2017, at approximately 11:55 p.m., Lt. Howard was parked in front of the Plaintiffs' home and running the license plate on Denise Toledo's motor vehicle. Lt. Howard had no cause for being at or near the Plaintiffs' home and/or to run Denise Toledo's license plate.

50.    On or about November 29, 2017, Denise Toledo, in fear for her safety and that of her family's, made a formal complaint to Captain Martin who immediately referred her to Captain Daniel, who initiated an investigation.

51.    Denise Toledo reported the incidents to Capt. Daniel and expressed that she was gravely concerned for her safety and that of her family, as she believed Lt. Howard was stalking her. Capt. Daniel told Denise Toledo that he would put the Commission on notice and that he or Deputy Clapprood would get back in touch with her regarding same.

52.    On or about November 30, 2017, Denise Toledo was called into a meeting with Captain Duda and Deputy Anthony. Denise Toledo was questioned as to the reasons that she reported the incident to Capt. Martin and not Capt. Duda and/or Deputy Anthony. Denise Toledo responded that she felt more comfortable speaking to Capt. Martin because he was aware of Lt. Howard's history.

53.    Deputy Anthony showed Denise Toledo a copy of the report made by Capt. Daniel and asked her multiple times if the report was accurate. Given Deputy Anthony's repeated questioning of the accuracy of Denise Toledo's report, it was her impression that Deputy Anthony sought to dissuade her from filing the report against Lt. Howard. It was common knowledge amongst the employees of the Defendant that Deputy Anthony and Lt. Howard were very close friends.

54.    In or about November of 2017, an internal investigation was conducted into the allegations against Lt. Howard. Both Denise Toledo and Julio Toledo participated in said investigation. The Plaintiffs engaged in protected activity.

55.    Denise Toledo was informed that Commissioner Barbieri had ordered that an investigation be conducted by the Defendant's Internal Investigation Unit and City Hall. Commissioner Barbieri also issued a Stay Away Order against Lt. Howard.

56.    Denise Toledo was informed by another "female officer" that she had had a Stay Away Order against Lt. Howard for similar reasons but that Sgt. Howard had not abided by it. The other "female officer" told Denise Toledo that Sgt. Howard had also parked in front of her house, spoke to her neighbors, called her cellphone and often drove by her when she was working road details and warned her to be careful. On one occasion, the other "female officer" sent Lt. Howard a text message telling him to leave her alone to which he replied "no."

57.    A "second female officer" told Denise Toledo that Lt. Howard would call her by the names of famous actresses that he believed were attractive and on one occasion, called her into the office where she found him with his pants undone and his zipper down. A "third female officer" informed Denise Toledo that Sgt. Howard asked her partner questions about her sex life. Both women were too scared to report the incidents in fear of retaliation from the Defendant.

58.    On or about December 5, 2017, Denise Toledo, on her own volition, filed a pro se Charge of Discrimination at the Massachusetts Commission Against Discrimination.

59.    On or about December 11, 2017, Lt. Howard was placed on paid administrative leave.

60.    In or about January of 2018, Officer Rodriguez approached Julio Toledo and informed him that he had observed Lt. Howard parked outside of the Plaintiffs' home. Officer Rodriguez had approached Sgt. Howard while in his cruiser and reported that he (Sgt. Howard)

appeared startled and said that the reason he was there was because he got "good Wi-Fi" there.

61. The Plaintiffs were both horrified and immediately complained.

62. In or about February of 2018, the Plaintiffs learned that Denise Toledo was pregnant and due to give birth on or about November 17, 2018.

63. The Plaintiffs both requested to take leave under the Family Medical Leave Act ("FMLA") together for the birth and care of their child beginning in or about mid October 2018.

64. The Plaintiffs worked in two (2) different units at the Defendant and the granting of their requests for leave under the FMLA would not have caused an undue hardship for the Defendant.

65. The Plaintiffs' requests to take leave together under the FMLA were denied because, according to the Human Resource employees at the Defendant, they were married.

66. In or about October 2018, Denise Toledo had to be hospitalized numerous times for medical complications from the pregnancy. Two (2) weeks prior to her due date, Denise Toledo's physician induced labor and the Plaintiffs' son was born on November 3, 2018.

67. After giving birth, Denise Toledo suffered from another medical condition which resulted in further hospitalizations.

68. The Plaintiffs' newborn son also suffered from a medical condition that required him to be admitted to a hospital in Boston, Massachusetts. The Plaintiffs' son was hospitalized for two (2) weeks thereafter until he was released home.

69. Julio Toledo requested FMLA leave again, but to no avail. The reason for the denial of FMLA leave was always that the Plaintiffs were married.

70.     Julio Toledo was forced to travel back and forth to Boston, Massachusetts to be with his newborn son and wife for weeks in between shifts. The Plaintiffs were denied their rights under the FMLA to take leave together for Denise Toledo's own serious medical condition, the birth of their son, their son's medical condition and to bond with their newborn together.

71.     On or about December 4, 2018, Julio Toledo was up for promotion. The promotional rankings were made public.

72.     Approximately four (4) weeks later, on or about January 2, 2019, Lt. Henderson lodged a bogus harassment complaint against Julio Toledo. The complaint cited two (2) incidents one of which had occurred almost six (6) years prior wherein Lt. Henderson had defaced the Plaintiffs' textbook and berated Denise Toledo regarding a police report. Lt. Henderson claimed that Julio Toledo had made a comment during an in-service training, months back in October of 2018, regarding another female officer's sexual orientation, which was untrue.

73.     Based upon information and belief, prior to Lt. Henderson's filing of the complaint, she was overheard telling another officer that she did not like Julio Toledo and that she was going to "fix it."

74.     Lt. Henderson has established a pattern and practice of filing false complaints against witnesses that had participated in the Defendant's internal investigation regarding Denise Toledo. Lt. Henderson is a close friend and ally of Lt. Howard.

75.     On or about March 8, 2019, Julio Toledo was called into an interview by the Defendant's Department of Internal Affairs and was interviewed by the Defendant's attorney regarding Lt. Henderson's bogus complaint. This is not a common practice and Julio Toledo is unaware of any other employees having been interviewed by the Defendant's attorney.

Julio Toledo believes that the interview was an attempt to intimidate him and to retaliate against him further for his cooperation in the investigation into Denise Toledo's complaints, including his own complaints against Lt. Howard and Lt. Henderson.

76. On or about March 15, 2019, Julio Toledo, on his own volition, filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination regarding the aforementioned facts. Lieutenant Henderson was also named in said complaint as a co-conspirator to the ongoing harassment. Lt. Henderson was interviewed by the Defendant's Department of Internal Affairs and was placed on notice of same.

77. An investigation into the Plaintiffs' allegations against Lt. Howard was never conducted. The Defendant claimed that Lt. Howard's health prevented him from being interviewed.

78. The incidents described herein are not an exclusive list of the harassment, discrimination and retaliation that the Plaintiffs experienced during their employment at the Defendant.

79. The Plaintiffs have suffered and continue to suffer from emotional distress as a result of the discrimination and harassment, sexual harassment and retaliation and the Defendant's knowing and willful repeated failure to remedy the situation.

80. The Plaintiffs have satisfied the prerequisites to filing suit.

### Count I
### (Title VII – Sex/Gender Discrimination)
### Denise Toledo v. Defendant

81. Denise Toledo has satisfied the prerequisites to filing suit.

82. Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

83. The discriminatory and harassing treatment of Denise Toledo, as described herein, violates the express provisions of M.G.L. c. 151B with regard to sex/gender.

84. There is direct and circumstantial evidence of sex/gender bias on the part of the Defendant including, but not limited to, the incidents of discrimination and harassment set forth above.

85. This environment, the conditions imposed upon Denise Toledo and the adverse actions taken against Denise Toledo related to her sex/gender adversely affected the terms and conditions of her employment.

86. Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to stop the discriminatory and harassing conduct based upon sex/gender from continuing.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to Title VII.

## Count II
### (Title VII – Hostile Work Environment)
### Denise Toledo v. Defendant

87. Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

88. Denise Toledo was treated differently as to the terms and conditions of her employment based upon the sexual harassment of her by Sgt. Howard.

89. Denise Toledo suffered a hostile work environment based upon her reporting of and/or resisting of said sexual harassment and the sexual harassment itself.

90. This environment and the conditions imposed upon Denise Toledo related to and adversely affected the terms and conditions of her employment.

91. Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to ensure that this harassing conduct would cease.

15

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to Title VII.

## Count III
### (Title VII – Sexual Harassment)
### Denise Toledo v. Defendant

92. Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

93. Denise Toledo was treated differently as to the terms and conditions of her employment based upon the sexual harassment, and the condoning of the sexual harassment of Denise Toledo by the Defendant.

94. This environment and the conditions imposed upon Denise Toledo related to and adversely affected the terms and conditions of her employment. Denise Toledo suffered a hostile work environment.

95. Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to ensure that the sexual harassment would not continue.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to Title VII.

## Count IV
### (Title VII – Retaliation)
### Denise Toledo v. Defendant

96. Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

97. Denise Toledo was treated differently as to the terms and conditions of her employment based upon her reporting and resisting of sexual harassment.

16

98.     This environment and the conditions imposed upon Denise Toledo related to and adversely affected the terms and conditions of her employment. Denise Toledo suffered a hostile work environment and adverse employment action.

99.     Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of Defendant to take reasonable steps to ensure that the retaliation would not continue.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to Title VII.

## Count V
### (Title VII – Retaliation)
### Julio Toledo v. Defendant

100.    Julio Toledo incorporates herein the previous allegations set forth in this Complaint.

101.    Julio Toledo was treated differently as to the terms and conditions of his employment based upon his reporting of sexual harassment and his cooperation as a witness in the Defendant's internal investigation into Denise Toledo's allegations of sexual harassment. Julio Toledo engaged in protected activity.

102.    This environment and the conditions imposed upon Julio Toledo related to and adversely affected the terms and conditions of his employment. Julio Toledo suffered a hostile work environment and suffered adverse employment action.

103.    Julio Toledo was severely and adversely affected by the Defendant's conduct and the failure of Defendant to take reasonable steps to ensure that the retaliation would not continue.

WHEREFORE, the Plaintiff, Julio Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to Title VII.

## Count VI
### (FMLA – Interference)
### Denise Toledo v. Defendant

104.    Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

105.    Denise Toledo's employment with the Defendant was adversely affected based upon Denise Toledo's requests for leave and for her invoking her rights under the FMLA.

106.    Denise Toledo was severely and adversely affected by the conduct of the Defendant and the failure of the Defendant to take reasonable steps to ensure that Denise Toledo's FMLA rights were made available to her.

107.    The conduct of the Defendant amounts to a clear intentional and willful violation of the relevant provisions of the FMLA as cited above.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests a judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to the relevant provisions the FMLA.

## Count VII
### (FMLA – Interference)
### Julio Toledo v. Defendant

108.    Julio Toledo incorporates herein the previous allegations set forth in this Complaint.

109.    Julio Toledo's employment with the Defendant was adversely affected based upon his requests for leave and for his attempts to invoke his rights under the FMLA.

18

110.    Julio Toledo was severely and adversely affected by the conduct of the Defendant and the failure of the Defendant to take reasonable steps to ensure that his FMLA rights were made available to him.

111.    The conduct of the Defendant amounts to a clear intentional and willful violation of the relevant provisions of the FMLA as cited above.

WHEREFORE, the Plaintiff, Julio Toledo, respectfully requests a judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to the relevant provisions the FMLA.

## Count VIII
### (FMLA – Retaliation)
### Denise Toledo v. Defendant

112.    Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

113.    Denise Toledo believes that she was denied leave with her husband, Julio Toledo, to take care of their newborn child under the FMLA based upon her attempts to invoke her rights under the FMLA.

114.    Denise Toledo was severely and adversely affected by the conduct of the Defendant and the failure of the Defendant to take reasonable steps to ensure that the Plaintiffs' rights were made available to them under the FMLA.

115.    The conduct of the Defendant amounts to intentional and willful violations of the FMLA.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, and for all damages available pursuant to the relevant provisions of the FMLA.

19

## Count IX
### (FMLA – Retaliation)
### Julio Toledo v. Defendant

116.    Julio Toledo incorporates herein the previous allegations set forth in this Complaint.

117.    Julio Toledo believes that he was denied leave with his wife, Denise Toledo, to take care of their newborn child under the FMLA based upon his attempts to invoke his rights under the FMLA.

118.    Julio Toledo was severely and adversely affected by the conduct of the Defendant and the failure of the Defendant to take reasonable steps to ensure that the Plaintiffs' rights were made available to them under the FMLA.

119.    The conduct of the Defendant amounts to intentional and willful violations of the FMLA.

WHEREFORE, the Plaintiff, Julio Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to the relevant provisions of the FMLA.

## Count X
### (M.G.L. c. 151B – Sex/Gender Discrimination)
### Denise Toledo v. Defendant

120.    Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

121.    The discriminatory and harassing treatment of Denise Toledo, as described herein, violates the express provisions of M.G.L. c. 151B with regard to sex/gender.

122.    There is direct and circumstantial evidence of sex/gender bias on the part of the Defendant including, but not limited to, the incidents of discrimination and harassment set forth above.

123.    This environment, the conditions imposed upon Denise Toledo and the adverse actions taken against Denise Toledo related to her sex/gender adversely affected the terms and conditions of her employment.

20

124.    Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to stop the discriminatory and harassing conduct based upon sex/gender from continuing.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to M.G.L. c. 151B.

### Count XI
### (M.G.L. c. 151B – Hostile Work Environment)
### Denise Toledo v. Defendant

125.    Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

126.    Denise Toledo was treated differently as to the terms and conditions of her employment based upon the sexual harassment of her by Sgt. Howard.

127.    Denise Toledo suffered a hostile work environment based upon her reporting of and/or resisting of said sexual harassment and the sexual harassment itself.

128.    This environment and the conditions imposed upon Denise Toledo related to and adversely affected the terms and conditions of her employment.

129.    Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to ensure that this harassing conduct would cease.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to M.G.L. c. 151B.

### Count XII
### (M.G.L. c. 151B – Sexual Harassment)
### Denise Toledo v. Defendant

130.    Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

131.    Denise Toledo was treated differently as to the terms and conditions of her employment based upon the sexual harassment, and the condoning of the sexual harassment of Denise Toledo by the Defendant.

132.    This environment and the conditions imposed upon Denise Toledo related to and adversely affected the terms and conditions of her employment. Denise Toledo suffered a hostile work environment.

133.    Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of the Defendant to take reasonable steps to ensure that this sexual harassment would not continue.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to M.G.L. c. 151B.

### Count XIII
### (M.G.L. c. 151B – Retaliation)
### Denise Toledo v. Defendant

134.    Denise Toledo incorporates herein the previous allegations set forth in this Complaint.

135.    Denise Toledo was treated differently as to the terms and conditions of her employment based upon her reporting and resisting of sexual harassment.

136.    This environment and the conditions imposed upon Denise Toledo related to and adversely affected the terms and conditions of her employment. Denise Toledo suffered a hostile work environment and suffered adverse employment actions.

137.    Denise Toledo was severely and adversely affected by the Defendant's conduct and the failure of Defendant to take reasonable steps to ensure that this sexual harassment would not continue.

WHEREFORE, the Plaintiff, Denise Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to M.G.L. c. 151B.

## Count XIV
### (M.G.L. c. 151B – Retaliation)
### Julio Toledo v. Defendant

138.    Julio Toledo incorporates herein the previous allegations set forth in this Complaint.

139.    Julio Toledo was treated differently as to the terms and conditions of his employment based upon his reporting of sexual harassment and his cooperation as a witness in the Defendant's internal investigation into Denise Toledo's allegations of sexual harassment. Julio Toledo engaged in protected activity.

140.    This environment and the conditions imposed upon Julio Toledo related to and adversely affected the terms and conditions of his employment. Julio Toledo suffered a hostile work environment and adverse employment actions.

141.    Julio Toledo was severely and adversely affected by the Defendant's conduct and the failure of Defendant to take reasonable steps to ensure that the retaliation would not continue.

WHEREFORE, the Plaintiff, Julio Toledo, respectfully requests judgment against the Defendant, City of Springfield, Police Department, and for all damages available pursuant to M.G.L. c. 151B.

Respectfully Submitted,


The Plaintiffs
DENISE TOLEDO and
JULIO TOLEDO
By Their Attorney


*/s/ Daniel J. O'Connell*                     Dated: August 16, 2019
DANIEL J. O'CONNELL, ESQ.
BBO No. 550633
O'Connell & Plumb, P.C.
75 Market Place
Springfield, Massachusetts 01103
Telephone No. (413) 733-9111
Facsimile No. (413) 733-9888
Email: doconnell@ocpllaw.com